■ In the Matter of NELSON S., a Person Alleged to be a Juvenile Delinquent, Appellant. [600 NYS2d 943] —Order of disposition of the Family Court, New York County (George Jurow, J.), entered on or about June 9, 1992, which, following a fact-finding hearing, adjudicated appellant a juvenile delinquent for having committed acts which, if done by an adult,

would have constituted criminal possession of a weapon in the second, third and fourth degrees and placed him on probation for 18 months, is unanimously reversed on the law, the motion to suppress granted and the petition dismissed, without costs.

On January 13, 1992, the Corporation Counsel filed a petition in the New York County Family Court charging the then nearly 14 year old appellant with the commission of acts which, if done by an adult, would constitute criminal possession of a weapon in the second, third and fourth degrees. Appellant subsequently moved to suppress any evidence seized from him on the ground that the police acted in violation of his statutory and constitutional rights, and the court conducted a hearing in connection with the matter. In that regard, the following facts were educed.

Police Officer Brett Fontana was on uniformed foot patrol at around 1:00 A.M. on December 28, 1991 when he observed two male Hispanic youths, who appeared to be in their early teens, heading east on Washington Square South. He identified appellant herein as one of the boys. Officer Fontana described the area, which was known for its drug trafficking, as very well lit, thus giving him an unobstructed view of the youths. At the same time, the officer noticed a black man walking west on Washington Square South. He had seen the same man, later identified as Lawrence Mitchell, about a half hour earlier at Washington Square Park and MacDougal Street where Mitchell and a white man had made hand gestures indicating an exchange of objects between them. Officer Fontana believed that these motions represented a drug transaction. In any event, he remained where he was as he watched Mitchell cross the street and approach the two teenagers. The officer then observed Mitchell engage in a conversation with the youths but could not hear what was being said.

Officer Fontana began advancing toward the trio. When he was about 15 to 20 feet from the group, he noticed Mitchell extend his left hand, which contained packages of marijuana, toward the boys. Appellant's companion had money between his thumb and index finger, and both youths were looking at Mitchell's hand. The officer, however, did not see any money in appellant's hands. When the three individuals realized that the officer was approaching them, they dropped their hands, turned around and began to walk away in the directions from which they had come. Mitchell dropped the glassine packets,

and appellant's companion put his hand back into his pocket. Officer Fontana thereupon commanded them to halt. They all complied, and he proceeded to pick up the four marijuana envelopes lying directly in front of Mitchell and radioed for assistance. As the officer was engaged in handcuffing Mitchell, the two teenagers started to walk away. Officer John Kimball, who was just arriving on foot at the scene, stopped the boys by grabbing their arms and returned them to Officer Fontana. Officer Kimball frisked the youths and recovered a loaded .25 caliber handgun from appellant. Although the arrest report stated that appellant was detained for attempting to purchase marijuana and that the gun was discovered during a search incident to the arrest, he was ultimately arraigned only on weapon charges.

In denying the motion to suppress, the court concluded that "it's doubtful whether the officer's observation of [appellant] and his behavior was clearly sufficient to establish probable cause * * *. Nonetheless, under these circumstances, and I'm taking into account the proximity, the viewing of Mitchell's hand, the brief conversation with Mitchell before Mitchell extended his arm, and the fact that they were from the beginning of the entire transaction to the end, when they walked away in the closest physical proximity, under those circumstances, the officer had the predicate of reasonable suspicion." A fact-finding was thereafter held over the course of three days during which a ballistics report showing the operability of the gun and accompanying ammunition was entered into evidence. At the conclusion of the hearing, the Family Court sustained all of the charges against appellant, and he has appealed.

An examination of the record herein reveals that, at most, appellant was an observer to an attempted drug transaction between his companion and Mitchell, an apparent drug dealer. There is certainly no proof that either or both of the teenagers went to Washington Square Park in order to buy drugs, merely that they were walking nearby when Mitchell came up to them with an offer to sell marijuana and appellant's friend agreed to the deal. Officer Fontana never saw appellant himself hold out money to Mitchell, accept any item(s) from him or, indeed, do or say a single thing evincing the intention of participating in a drug transaction. While there are circumstances under which presence at the scene of a crime might provide a policeman with the requisite probable cause to make an arrest (People v Martin, 32 NY2d 123, 125), the law is clear that "a person's mere propinquity to others

independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" *(Ybarra v Illinois,* 444 US 85, 91; *see also, People v Martin, supra).*

Appellant committed no act that tended to connect him with any drug transaction with which his companion might have been involved, and there was simply no justification for stopping him *(see, People v May,* 81 NY2d 725). Since the inference of guilt by association is impermissible *(Ybarra v Illinois, supra; People v Chinchillo,* 120 AD2d 266; *People v Ballejo,* 114 AD2d 902), there was absolutely no basis upon which the police could have entertained a reasonable suspicion that appellant had been or was about to commit a crime *(see, People v May, supra; People v Sobotker,* 43 NY2d 559; *People v De Bour,* 40 NY2d 210). Accordingly, there was no support even for a frisk of appellant (CPL 140.50; *People v Hollman,* 79 NY2d 181; *People v Carney,* 58 NY2d 51), and his attempt to leave the area as Officer Fontana was handcuffing Mitchell "could not serve to create a reasonable suspicion of criminality given [appellant's] right 'to be let alone' and to refuse to respond to police inquiry" *(People v May, supra,* at 728). It is significant that appellant was never accused of any drug offenses. Yet, he was placed under arrest merely because of his association with another youth, and the product of an unlawful search then became the predicate for the charges in the petition filed against him. In the absence of any reasonable suspicion to frisk appellant, much less the probable cause necessary to support an arrest, the motion to suppress should have been granted and the petition dismissed. Concur—Sullivan, J. P., Milonas, Ellerin and Asch, JJ.